UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Gamma-10 Plastics, Inc.,

Plaintiff,

vs. REPORT AND RECOMMENDATION

Solvay Polymers, Inc.

Defendant. Civ. No. 00-345 (DSD/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 6th day of April, 2000.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendant's Motion to Stay the Proceedings Pending Arbitration. A Hearing on the Motion was conducted on April 4, 2000, at which time, the Plaintiff appeared by Mark N. Stageberg, Esq., and the Defendant appeared by Steven J. Wells, Esq. For reasons which follow, the Motion to Stay should be granted.

## II. Factual and Procedural Background

In March of 1999, the parties, who are each engaged in the development of polymer and polypropylene materials, entered a Mutual Secrecy Agreement in order to preserve the confidentiality of

FILED APR 0 6 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

certain assertedly trade secret, and proprietary information, which the parties were willing to exchange, in order that they might jointly "evaluate and test the material supplied and provide results to each party." Mutual Secrecy Agreement, at p. 1. Specifically, the "Confidential Information" was defined to include "certain confidential business and technical information relating to their respective sales, marketing, operations, manufacturing costs, additives, products and processes." Id. The "Confidential Information" would "include disclosures made verbally or in writing, and samples, if provided." The Agreement went on to provide, as follows:

> With respect to such Confidential Information, each party hereby agrees to hold in confidence and refrain from communicating the Confidential Information, except as may be necessary for the purpose set forth above or except as may be expressly authorized in writing by the disclosing party.

Id.

The Mutual Secrecy Agreement also established the following mechanism for the resolution of disputes between them, as those disputes related to their Agreement:

> Any controversy or claim arising out of or in connection with this Agreement, or the breach thereof, that cannot be settled by agreement of the parties shall be settled by binding arbitration to be held in a mutually agreed upon location, according to the rules of the American Arbitration Association. The parties agree to abide by and carry out any award

> rendered by a majority of the arbitrators, and any such award may be entered as a judgment by any court of competent jurisdiction.

Id. at 2.

According to the Plaintiff, "upon information and belief, [the Defendant has utilized the Confidential Information provided by [the Plaintiff] for its own private use, advantage and profit." Plaintiff's Complaint, at ¶VIII. Again, "upon information and belief," the Plaintiff alleges that the Defendant has: 1) refused to provide to the Plaintiff the results of the Defendant's evaluation and testing of the materials the Plaintiff provided; 2) used the Confidential Information that the Plaintiff has supplied for purposes other than the limited evaluation and testing of the material as provided by the Mutual Secrecy Agreement; 3) disseminated the Confidential Information to parties other than the Defendant; 4) developed gamma resistant polypropylene polymer material for commercial sale and has made sales of such materials for its own profit, advantage, and gain; and agreed to appropriately compensate the Plaintiff if, through their joint effort a gamma resistant polypropylene material was developed for commercial sale. Id. at ¶¶IX, X, XI, XII, and XIII.

As a consequence of these asserted wrongful acts by the Defendant, in January of 2000, the Plaintiff commenced an action, in the Minnesota District Court, for the County of Hennepin, alleging

actions for a breach of contract; for fraud; for negligent misrepresentation; for promissory estoppel; for unjust enrichment; for a violation of the Minnesota Uniform Trade Secrets Act, Minnesota Statutes Section 325C.01 et seq.; and for Injunctive Relief. On February 14, 2000, the Defendant removed the action to this Court on diversity of jurisdiction grounds and, on March 21, 2000, the Defendant filed its present Motion to Stay pending the completion of arbitration. The Plaintiff opposes the Motion based upon a narrow reading of the parties' arbitration provision.

## III. Discussion

The parties concede that the issue, as to the scope of arbitrability, is for the Court to decide. In First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995), the Supreme Court directed that "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence to do so." See also, Lee v. Chica, 983 F.2d 883, 886 n. 4 (8th Cir. 1993), cert. denied, 510 U.S. 906 (1993). Here, neither of the parties has presented such evidence as to the parties intent to submit issues of arbitrability to arbitration and, in the absence of such evidence, we proceed to the issue of arbitrability.

When faced with an issue of arbitrability, "[t]he limited duty of the district court is to determine whether there is an agreement

to arbitrate, and whether the issue [presented] is one which the parties agreed to arbitrate." General Mills, Inc. v. Hunt-Wesson, Inc., 889 F. Supp. 1119, 1121 (D. Minn. 1995), citing Houlihan v. Offerman & Co., 31 F.3d 692, 694 (8th Cir. 1994); see also, Telectronics Pacing Systems, Inc. v. Guidant Corp., 143 F.3d 428, 433 (8th Cir. 1998)("A matter should not be sent to arbitration unless there is a valid agreement to arbitrate and the underlying dispute falls within the scope of that agreement."). Here, the Plaintiff does not challenge the validity of the parties agreement to arbitrate and, therefore, our analysis necessarily turns to whether the claims, which the Plaintiff raises in its Complaint, fall within the scope of their agreement.

"Generally, 'there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."'" Telectronics Pacing Systems, Inc. v. Guidant Corp., supra at 433, citing AT & T Tech., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986), quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960). In construing an arbitrability clause, under this presumption, "[w]e look to principles of Minnesota contract law in order to determine whether the parties agreed to submit their

present claims to arbitration." Simitar Entertainment Inc. v. Silva Entertainment, 44 F. Supp.2d 986, 993 (D. Minn. 1999); see also, Keymer v. Management Recruiters Int'l, Inc., 169 F.3d 501, 504 (8th Cir. 1999)("We apply ordinary contract principles to decide whether parties have agreed to arbitrate a particular matter."), citing First Options of Chicago, Inc. v. Kaplan, supra.

Of course, such arbitrability questions must be considered with a "healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983), but "the [Federal Arbitration Act's] pro-arbitration policy does not operate without regard to the intent of the contracting parties, for arbitration is a matter of consent, not of coercion." Keymer v. Management Recruiters Int'l, Inc., supra at 504, citing Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1998). Stated simply, "[a] party who has not agreed to arbitrate a dispute cannot be forced to do so." AT & T Tech., Inc. v. Communications Workers of Am., supra at 648.

Here, the parties unambiguously agreed to arbitrate "[a]ny controversy or claim arising out of or in connection with this [Mutual Secrecy] Agreement, or the breach thereof * * *." While, on at least one prior occasion, we explored the semantical, if not

substantive differences, between arbitration provisions which employed terms such as "arising out of," or "arising under," and those which contained, additionally, the phrase "relating to," we have no occasion to do so here. See, Simitar Entertainment, Inc. v. Silva Entertainment, supra at 994-96 (concluding that an interpretation of "arising under," or "arising out of," was as broad as that applied to "arising out of or relating to."). As we expressed at the time of the Hearing, our reading of the arbitrability language in question, and the governing law, persuades us that, to obtain an Order compelling arbitration -- and, correlatively, an Order staying these proceedings -- we must be convinced that, but for the Mutual Service Agreement, the Plaintiff would be without a viable cause of action. On the Record submitted, we have such a conviction.

Each of the Plaintiff's causes of action has, as its genesis, the Plaintiff's provision of Confidential Information to the Defendant. In a synopsized fashion, the Plaintiff asserts, in its Complaint, the following claims:

> 1. That the Defendant breached the Mutual Secrecy Agreement by employing the Confidential Information for purposes not contemplated by that Agreement;
>
> 2. That the Defendant obtained that Agreement fraudulently, or through negligent misrepresentations, by employing the Confidential

Information in violation of restrictions imposed by that Agreement;

3. That the Defendant employed the Confidential Information in ways that breached an ostensibly oral promise, made to the Plaintiff, that, should the Information produce a commercial product, that the Plaintiff would be appropriately compensated and, having done so, the Defendant should be estopped by that promise;

4. That, in violating the restrictions of that Agreement, as to the use of the Confidential Information, the Defendant has been unjustly enriched;

5. That, in breaching the restrictions of that Agreement, by using the Confidential Information for purposes not envisioned by that Agreement, the Defendant violated the Minnesota Trade Secrets Act; and

6. That, to prevent the Defendant from further violations of that Agreement, the Court should grant Injunctive Relief.

Plainly, not one of the Plaintiff's asserted causes of action would exist but for the Plaintiff's provision of Confidential Information to the Defendant, under the protections of the Mutual Secrecy Agreement.

To stave arbitration on any claim, except for the breach of contract action -- which the Plaintiff concedes is subject to arbitration -- it advances two principal arguments, each of which is unavailing. First, the Plaintiff argues that the arbitration clause limits its scope to the Mutual Secrecy Agreement, while the

Plaintiff has alleged claims under a separate, apparently oral promise, and under a Minnesota Statute, to name but two examples. According to the Plaintiff, since the parties did not expressly incorporate other agreements, oral or written, or violations of State law, in their arbitration clause, the Plaintiff should not be coerced into arbitrating those claims. The argument, however, ignores the plain intent of the parties to include, within the scope of arbitration, "any controversy or claim" -- without any restriction -- except that the "controversy or claim" must be one "arising out of or in connection with [the Mutual Secrecy] Agreement." Had the parties intended further, or more specific exceptions, it was within their contracting powers to do so. Instead, they employed a short-hand means of inclusively designating "any controversy or claim" as appropriate for arbitration, so long as it arose out of, or in connection with, the Mutual Secrecy Agreement. All of the Plaintiff's claims so qualify for arbitration.

Next, the Plaintiff argues that, if relegated to arbitration, it might not have access to the full complement of discovery that would be available under the Federal Rules of Civil Procedure. Some would argue that such an abbreviated approach toward the resolution of private disputes was, in all likelihood, the basis for the parties' mutual election of arbitration as the preferred

method of resolving "any controversy or claim arising out of or in connection with [the Mutual Secrecy] Agreement." The fact that the parties expressly adopted the "rules of the American Arbitration Association," as a part of their arbitration provision, lends great weight to such an argument. Ultimately, however, the motivation for incorporating an arbitration clause is unimportant, when the parties' mutual intent to do so is, as here, unmistakably clear.[1]

"Once a Court has determined, that a dispute falls within the scope of an arbitration agreement, the proceedings in the case, on the issues referable to arbitration, must be stayed pending the completion of arbitration." Simitar Entertainment, Inc. v. Silva Entertainment, Inc., supra at 997; see also, Keymer v. Management Recruiters Int'l, Inc., supra at 504 ("If the claims are arbitrable according to the terms of the agreement, the proceedings must be stayed pending arbitration."); Title 9 U.S.C. §3. Here, the imposition of a Stay is not complicated by the presence of non-arbitrable claims. See, e.g., Simitar Entertainment, Inc. v. Silva

---

[1]More importantly, the availability and extent of discovery is, in some measure, a function of the parties' agreement. If they are unable to agree, then the Arbitrator is best-suited to tailor discovery so as to satisfy what the Supreme Court has again reiterated, in a somewhat different context, as the Federal Arbitration Act's "statutory policy of rapid and unobstructed enforcement of arbitration agreements." Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co., --- U.S. ---, 2000 WL 289572 *5 (U.S., March 21, 2000), quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23 (1983).

Entertainment, Inc., supra at 997; All Saint's Brands, Inc. v. Brewery Group Denmark, A/S, 57 F. Supp.2d 825, 831-833 (D. Minn. 1999). Since all of the Plaintiff's causes of action are arbitrable, according to the parties' Mutual Secrecy Agreement, this proceeding should be stayed while the parties proceed through arbitration.

NOW, THEREFORE, It is --

RECOMMENDED:

1. That the parties be directed to proceed to arbitration, in accordance with the provisions of their Mutual Secrecy Agreement, forthwith.

2. That the Defendant's Motion to Stay the Proceedings Pending Arbitration [Docket No. 4] be granted.

3. That, pending the completion of arbitration, this matter should be placed in an Administrative Stay, and the parties should be directed to contact the Court, upon the completion of arbitration, for the conduct of a Status Conference.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than April 21, 2000,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than April 21, 2000,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.

For Immediate Release
March 7, 2000

# PUBLIC NOTICE

## UNITED STATES DISTRICT COURT

## FEDERAL COURT PROPOSES TO AMEND LOCAL PRACTICE RULES

The U.S. District Court for the District of Minnesota announces that the Court approved, subject to public comment, two amendments to its local rules of practice recommended by the Court's Federal Practice Committee chaired by Minneapolis Attorney Cliff Greene of the law firm Greene Espel. These proposed amendments are as follows:

- **LR 4.1 Service**

  Local Rule 4.1 will be amended to allow Minnesota county sheriffs and their deputies to perform the duties relating to civil process that are referred to in Fed. R. Civ. P. 4.1. The Committee Note accompanying this local rule has also been amended.

- **LR 79.1 Custody and Disposition of Records, Exhibits and Documents Under Seal**

  Local Rule 79.1 will be amended to clarify the procedures that the Clerk of Court will follow for the disposition of documents filed under seal. Any such document, (as well as any model, diagram or other exhibit introduced as evidence), will have to be removed by the party that submitted it within four months after the case is finally decided, (unless there is an appeal, in which event the deadline will be extended to 30 days after the appeal is completed). The deadline for removal may be extended by court order. Sealed documents, (as well as models, diagrams and other exhibits), that are not removed in a timely manner may be destroyed, after notice, by the Clerk.

As required by federal statute, the proposed revisions will be posted by the Court for public review and comment through **Friday, April 7, 2000**, and will be adopted by the full Court following consideration of any comments or suggestions received by the Clerk of Court (see below) during the public notice period.

The proposed local rules are available for review by accessing a temporary web site at http://members.xoom.com/localrules/; in the Office of the Clerk of Court in either St. Paul, Minneapolis or Duluth; or by contacting the Clerk of Court at the address below.

Francis E. Dosal, Clerk
U.S. District Court
708 Federal Building
316 North Robert Street
St. Paul, MN 55101
651-848-1123